# Griel *v*. Lomax.

*Action by Purchaser for Money Paid under Contract.*

1. *Assignment of interest in executory contract of purchase; misrepresentations as fraud; expression of opinion.*—On a sale and transfer by one of three co-purchasers, of his interest in the tract of land under their executory contract, a misrepresentation or concealment by him of a material fact, which it was his duty to disclose, is a fraud, for which the transferree may claim a rescission, and recover back the money paid; as if he concealed the fact that the three purchasers were required to give their joint notes for the deferred payments. or falsely stated that they were to give their separate notes, each for his own third. But, if he stated the fact that they were to give their joint notes, or other facts which necessarily implied that joint notes were to be given by them, his further statement that the transferree, in order to get a deed for his one-third interest, would only have to pay one-third cash and give his notes for the deferred payments, would be merely the expression of an opinion, and would not constitute a fraud.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Tennent Lomax, P. C. Massie, and T. S. Sayre, against Jacob Griel, to recover $100, with interest, which plaintiffs had paid to defendant on a purchase of his interest in a lot or parcel of land in the town of Sheffield, and was commenced on the 21st June, 1887. The contract between the parties was reduced to writing, dated at Mont-

[Griel v. Lomax.]

gomery, Jan. 6th, 1887, signed by said Griel *only*, and in these words : "For and in consideration of $100 to me in hand paid, by Patrick Massie, T. Lomax, and T. S. Sayre, I, Jacob Griel, do hereby transfer and assign unto said Massie, Lomax and Sayre all my right, title and interest, in and to that certain property recently contracted for by said Jacob Griel, C. L. Matthews, and J. C. O'Connell, to be conveyed by A. J. Moses, situated on Raleigh Avenue in the city of Sheffield, Colbert county, Alabama; and *we* (?) agree to assume all the liabilities of said Griel in and about said purchase." The complaint contained the common counts for money paid, and money had and received; and special counts on the contract, alleging failure of consideration, fraudulent concealment, and fraudulent misrepresentation of material facts, on the part of the defendant. The case was tried on issue joined, but the record does not show what pleas were filed.

It was proved on the trial, as appears from the bill of exceptions, that in December, 1886, the defendant (Griel), with said Matthews and O'Connell, bought from A. J. Moses his interest in the lot or tract of land mentioned in the written instrument, which Moses had bought from the Sheffield Land Company; that, by the terms of the contract between them and Moses, which was not reduced to writing, one-third of the purchase-money was to be paid in cash, and their notes given for the balance; that conveyances were to be executed when Moses had procured a deed from his vendor, the Sheffield Land Company, or he was to procure conveyances to them directly from the Sheffield Land Company; that Moses afterwards procured deeds from the Sheffield Land Company, and sent them to Moses Bros. at Montgomery, to be delivered to Griel, Matthews and O'Connell, on their compliance with the stipulations of the contract with him; that Griel refused to have anything to do with the matter, as he had sold out his interest to the plaintiffs, and Matthews and O'Connell refused to complete the contract with plaintiffs instead of Griel; that the deeds were therefore never delivered, and the contract of sale never consummated. The plaintiffs insisted, that defendant fraudulently concealed from them the fact that he was to give his notes, jointly with Matthews and O'Connell, for the purchase-money not paid in cash; and that he fraudulently represented to them that it would only be necessary for them, in order to get a title to the land, to make the cash payment, and to give their individual notes for the balance of the purchase-money; and they testified to these facts in substance, as stated in the opinion of the court; while Matthews, O'Connell and Moses testified as to the terms of the original contract between them.

The defendant reserved exceptions to several parts of the affirmative charge given by the court, and to the refusal of several charges asked; and these matters are here assigned as error. The opinion of this court does not require a statement of these charges in full.

ARRINGTON & GRAHAM, for appellant.

GEO. M. MARKS, *contra.*

COLEMAN, J.—This is the third appeal in this case. Many of the principles of law involved in the present appeal as presented by the present record were settled when the case was here on former appeals.—89 Ala. 420. We then held that, if Griel represented that separate notes were to be given, and the truth was that joint notes were to be given by him and his co-partners, this would be the misrepresentation of a material fact, which would vitiate the contract if the plaintiffs relied upon such statement, and were justified by the circumstances in relying on it as an inducement to such contract, and were thereby deceived and injured. And this would follow, although Griel did not know his statement in this respect was untrue.

The testimony of the witnesses Lomax and Massie, if credited by the jury, as being a full and correct statement of the transaction, brings the case fairly within the application of this principle of law. The former testifies, among other things, that Griel said all that plaintiffs would have to do to get a title to the land, which plaintiffs were contracting to purchase from him, was to make a one-third cash payment, and execute their notes for one-third of the two deferred payments. The witness Massie, on cross-examination, testified substantially to the same facts, being more specific in stating that they were to pay one-third cash, and to give *separate* notes for the one-third deferred payments. The testimony of these two witnesses, fairly construed, excludes the idea that, in making these statements, the defendant (Griel) was merely expressing his opinion as to the effect and meaning of his contract with Moses, from whom he purchased the land. There is nothing in their testimony from which it could be remotely inferred, or even conjectured, that in order to get a title to the land it would be necessary for them to execute joint notes with O'Connell and Matthews, or to put them in inquiry of this fact.

The testimony of the witness Sayre is not so full as that of these two witnesses, Lomax and Massie, and, as we interpret his evi-

dence, it calls into application a different principle of law. His version of the matter is, that Griel stated that he (Griel), O'Connel and Matthews bought two lots from Moses, for about $5,000 ; that they were to pay one-third cash, one-third in one year, and one-third in two years, and when plaintiffs paid one-third cash, and executed their notes for the deferred payments, "you will step into my shoes, and I step out." This statement, made to plaintiffs, tends to show a joint purchase by Griel, O'Connell and Matthews, and implies that joint notes were to be executed by Griel, O'Connell and Matthews. 89 Ala. 420. If plaintiffs were informed by Griel that such was the condition of his interest and character of his purchase from Moses, and he then stated to plaintiffs all that was necessary for them to do to get title to the land would be to pay one-third cash and execute their separate notes for one-third of the deferred payments, such a statement would not be the affirmation of a fact, but the mere expression of his opinion as to the meaning or legal effect of his contract of purchase with Moses. The facts are sufficient to show that plaintiffs had the right to rely upon every statement of fact made by Griel, in regard to the terms of his purchase from Moses. And if Griel did not undertake or pretend to state the terms of his purchase from Moses, or the condition of his title, but did state that all plaintiffs had to do to get a deed to his third interest was to pay one-third in cash, and execute their separate notes for the payment of the deferred third interest transferred to them, plaintiffs had the right to rely upon this statement as representing that Griel's title and purchase from Moses was such that he was authorized to sell it separately, and that his title could be acquired by the execution of their separate notes. Such a statement impliedly affirms the existence of every fact necessary to sustain the statement. It repels every suggestion that the original vendees of Moses were to execute joint notes for the purchase-money. Such a misrepresentation was constructively fraudulent, whether wilfully and intentionally made or not. On the other hand, if plaintiffs were informed by Griel that he, O'Connell and Matthews purchased the two lots at a gross sum, to-wit, $5,000, and that they were to pay one-third cash, and execute their notes for the deferred payments, plaintiffs are held to know the legal effect of such a contract, and that it implies the execution of joint notes for the deferred payments. If Griel thus stated the terms of his purchase, and then said to plaintiffs all they had to do to get a deed to his third interest in the land was to pay one-third cash, and execute their separate notes for the deferred payments, this would be no more

[Griel v. Lomax.]

than the expression of his opinion as to the legal effect of his contract of purchase from Moses.

In one case, plaintiffs are not informed as to the terms of Griel's purchase from Moses, and have the right to presume that Griel knows and understands his contract, and states truly his title and how it may be conveyed. In the other case, plaintiffs are informed of the facts and terms of Griel's purchase from Moses, and being thus placed in possession of the facts and of his title, in the absence of confidential relations, or other special circumstances, which do not arise in this case, plaintiffs had no right to rely upon the opinion of Griel, as to the legal effect of the contract. A mere opinion of the legal effect of a contract, after stating fairly the facts and condition of the contract, under circumstances developed by the testimony in this case, whether made in ignorance or with the intention to deceive, will not avail plaintiffs. They had no right to rely or act upon Griel's opinion, and, if thereby misled, they must take the consequences. The evidence of the witness Griel throws very little light on the question. In one place he says, "he told them the terms of the purchase," but nowhere does he state what he did tell them. Whether the terms were the same as testified to by Lomax and Massie, or by Sayre, or whether he gave a different version, or made any statement as to the terms, does not appear. The principle of law which declares that a contract may be avoided as fraudulent upon the ground that the parties were misled and deceived by the expression of an opinion fraudulently made with the intent to deceive, does not arise upon the evidence in the present record. There is no promise of future performance. *Birmingham Warehouse & Elevator Co. v. Elyton Land Co.*, 92 Ala. 407.

The material questions are: Did Griel make such a statement of facts in regard to his purchase from Moses, as to indicate that he had the right to sell his interest separate, and that his vendees could step into his shoes by paying one-third cash, and executing their separate notes for the deferred payment of one third; or did he, without undertaking to state the terms and conditions of his purchase from Moses, represent to his vendees that upon payment of one-third cash, and the execution of their separate notes for the deferred payments of this third interest, they could step into his shoes? If he did, and the evidence shows that this was untrue, and that joint notes with O'Connell and Matthews for a much larger sum were required, this would be misrepresentation of a fact; and if the parties relied upon this statement, and were misled by it, and had no information except such as derived from

[Griel v. Lomax.]

Griel, it was a fraud, and would avoid the contract, whether Griel knew the statements were false, or whether made with the intent to deceive. On the other hand, did Griel tell the plaintiffs, as testified to by Sayre, or otherwise inform them, that his purchase from Moses was jointly with others, and that joint notes with others were to be executed for the whole of the two lots, or make statements which legally implied it, and, as a matter of opinion of the legal effect of the contract of purchase from Moses, state that plaintiffs could get title to his one-third interest by paying one-third cash, and executing their separate notes for the deferred payments of his third interest? If so, under the evidence in this case, the expression of his opinion, whether made ignorantly or with intent to deceive, was not a fraud upon plaintiffs available to them. These are the only material questions in the case not heretofore decided; and whether the evidence sustained the one or the other, was a matter for the jury.

The fifth exception to the general charge of the court was well taken. The principle asserted by the charge to which this exception applies, is to the effect that, although Griel may have stated facts which showed that his purchase from Moses was joint, and that he, O'Connell and Matthews were required to execute joint notes, yet, if he expressed the opinion that, under this contract, plaintiffs could get his interest by paying one-third cash, and executing their separate notes for the deferred payment for this third interest, and this opinion was fraudulently expressed with intent to deceive, that would avoid the contract. It is not every expression of opinion, falsely made with intent to deceive, even though acted upon, that avoids a contract. As we have shown, it is only in cases where the parties deceived were justified in trusting to and relying upon the opinion, that the principle applies.

We find no merit in the other exceptions to the general charge, or error in the charge given at the request of the plaintiff. Charges 1, 5 and 6 requested by the defendant, conflict with the law as we have declared it, and were properly refused. There is no evidence calculated to put plaintiffs on inquiry, except it be that of Sayre. His testimony, unexplained, discloses the fact of a joint purchase, and the defendant received the benefit of this phase of the evidence in the charge given by the court; otherwise the charge is abstract.

Charge 3 places an improper construction on the written agreement referred to. Charge 4 assumes a disputed fact, asserts an unauthorized conclusion, and ignores material testimony in the case. Charge 7 assumes that plaintiffs knew of

[Cromwell v. Horton.]

the joint purchase from Moses, and is misleading. For the 5th exception to the general charge of the court, the case is reversed.

Reversed and remanded.